Tesfaye W. Tsadik, Esq., CSB#108103
Law Offices of Tesfaye Tsadik
1736 Franklin Street, 10th Floor
Oakland, CA 94612
Telephone: (510) 839-3922
Facsimile:( 5100 444-1704
E-mail: ttsadik@pacbell.net

Attorney for Defendant and Cross-Complainant
ADEL M. MAHMOUD, JR.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SELECT PORTFOLIO SERVICING , INC . <br><br> Plaintiff, <br> VS. <br><br> PACIFIC SPECIALTY INSURANCE COMPANY; ADEL M. MAHMOUD, JR., <br> Defendants. <br> _____ <br> ADEL M. MAHMOUD, JR <br><br> Cross Complainant <br> vs. <br> SELECT PORTFOLIO SERVICING, INC., and PACIFIC SPECIALTY INSURANCE COMPANY. <br><br> Cross Defendants. <br> _____ | **CASE NO.  3:14-cv-00551 YGR** <br><br> **DEFENDANT ADEL M. MAHMOUD'S CROSS-COMPLAINT FOR DAMAGES AGAINST CROSS-DEFENDANTS PACIFIC SPECIALITY INSURANCE COMPANY AND SELECT PORTFOLIO SERVICING, INC.** <br><br> **JURY TRIAL DEMANDED** |

COME NOW Cross-complainant  ADEL M. MAHMOUD and, for cause of action against Defendants, allege and state as follows:

**Parties**

1. Cross- complainant Adel M. Mahmoud, Jr.  (hereinafter "Cross-

complainant") is, and at all times herein mentioned was over the age of 18 and residents of Contra Costa County, the City of Richmond. .

2. Cross-defendant Select Portfolio (hereinafter 'SPS") is, and at all times herein mentioned was, a Utah corporation whose principal place of business is Salt Lake city, Utah.

3. Cross-defendant Pacific Speciality Insurance Company, (hereinafter ("PSIC"), on information and belief, is a corporation authorised to do business under California law with its principal place of business in Menlo Park, California.

4. Whenever in this cross- complaint an act or omission of a corporation or business  entity is alleged, the allegation shall be deemed to mean and include an allegation that the corporation or business entity acted or omitted to act through its authorized officers, directors, agents, servants and/or employees, acting within the course and scope of their duties, that the act or omission was duly authorized by corporate managerial officers or directors, and that the act or omission was subsequently ratified by the officers and directors of the corporation or business entity. As a result of their business activities, cross defendant SPS, was subject to and required to comply with the foreclosure avoidance provisions of the California Civil Code.

5. Cross-Complainant is informed, believes and thereon alleges that cross- defendants, and each of them, are in sole possession, custody or control of e-mails, notes of telephone conversations, log entries, recorded messages and other forms of communication or correspondence that identify the dates, times, and persons, including, but not limited to, cross-defendants' employees, representatives and/or agents who spoke with cross-

complainant; the content of those conversations, including, but not limited to information, disinformation, false promises, etc. that form the basis of cross-complainant's allegations.

6.   Cross-complainant is informed, believes and thereon alleges that reasonable discovery and investigation will reveal the dates, times, and persons, including, but not limited to defendants' employees, representatives, and/or agents, who spoke with cross-complainant; the content of those conversations, including, but not limited to information, disinformation, false promises, etc. that form the basis of cross complainant's causes of action.  Cross-complainant is  informed, believes and thereon alleges that such discovery and investigation will allow cross-complainant to successfully amend this cross-complaint to satisfy the requisite specificity for each  of the allegations contained herein.

**Jurisdiction and Venue**

7.  This is a cross -complaint against cross defendant who have asserted the jurisdiction and venue of this court based on diversify jurisdiction of the defendants including this cross-defendant.  All defendants resides within the Judicial district of this court.

**FACTUAL BACKGROUND**

8.  Cross-complainant purchased a single family dwelling located at 6305 Jerilyn Avenue, in Richmond Californa in July 1995.  In 2005 cross-complainant refinanced the loan on his residence and as part of the refinance he executed a promissory note and deed of trust in the amount of $407,000(loan documents) with Argent Mortgage Company, LLC, as the new lender.   On information and believe sometime in 2011 the loan was assigned to Bank of America which, in 2012 assigned to Wells Fargo Bank.

On information and belief, some time in late 2011 or early as 2012 cross-defendant SPS acquired the servicing of the loan from Wells Fargo Bank.

10.  At the time he refinanced his residence, cross defendant was the owner and operator of health food café in San Francisco, which had great promise for generating profit capable of supporting his mortgage.  As a result fo the economic down-turn in 2011 his business slowed down and was at a point he was not able to meet his mortgage payment.  He lost his Café but found employment as a Chef and continued to pay his mortgage until he was laid off of his job in October 2011    He subsequently applied for loan modification with Bank of America under the Home Affordable Modification Program ("HAMP").

11.  HAMP is a federal government program designed to prevent mortgage foreclosures.  (12 U.S.C. §5201 et. seq.)  Through HAMP, the government has encouraged mortgage lenders and servicers to provide loan modification for eligible borrowers.   The HAMP medification process begins with preliminary evaluation by the mortgage servicer of the borrower's eligibility.  If the preliminary evaluation indicated that the borrower was eligible for a H"AMP modification, the servicer would then offer the borrower a Trial Period Plan, usually lasting three months, during which period the borrower was complies with some step and after which time, the borrower would be given a permanent loan modification.  Bank of America is one of many mortgage lenders and servicers that participated and issued Trial Period Plan.

12.  Cross- complainant  received a Trial Period Plan and was negotiation his payment plan when the loan, on information and belief, was assigned to Wells Fargo Bank with its loan servicer cross-defendant SPS.

11.   On or about October 12, 2012 Cross defendant SPS advised cross complaint that "There is help available if you are having difficulty making your mortgage loan payments.  You may be eligible for Home Affordable Modification, part of the initiative announced by the President Obama to help homeowners.  **As you mortgage loan servicer, we will work with you in an effort to make your mortgage payment affordable"** (Emphasis therein).

12..   After cross-complainant  received the October letter from SPS, he promptly copied his previously submitted documents to SPS, even though as a successor in interest, to the deed of Trust of Bank of America has in its possession all the documentation necessary and that plaintiff qualified for Trial Period Plan.   In spite of submission of the documentation,   SPS continued sending  to cross-complainant the same letter, over and over again, that stated "Thank you for contacting us to discuss your home loan needs. We are pleased to let you know that you meet the criteria required to apply for a new modification program recently announced as a result of the U.S. Department of Justice and State Attorneys General Global Settlement...."   Several these letters were received from SPS by cross-complainant October 12, 012 through October 2013.  Cross complainant believes that there was deliberate delays in reviewing cross-complaints' documents, and SPS was engaged in lies about whether required documents had been received, and lies also about whether cross-defendants modifications were actually under review.

13. On or about December 18, 2012 cross-complainant residence and its contents was damaged by fire and cross-defendant was forced to evacuate his residence.   At the time of the corss-defendant has insurance

policy to cover damages to his residence and its content with PSIC.   On information and believe cross-defendant alleges that the policy that was in effect at the time was policy # ANG 0218413-08 (01).

## FIRST CAUSE OF ACTION

### *Breach of Contract*

### *(Against Pacific speciality Insurance Company)*

14.   Cross-complainant incorporates the allegations from 1 to 13 as though fulls set forth herein.

15.   .  On or about December 18, 2012 a massive fire severely damaged and/or destroyed cross-complainant's residence  and contents. Cross-complainant was forced to evacuate and relocate as a result of the fire.

16.  Following the fire cross-complainant  notified PSIC and filed a claim for damages for his residence, personal belonging and for his relocation. Cross-complainant filed his claim sometime late January or February 2013.

17.  The insurance adjusters came to cross-complainant's residence to assess the damage to the dwelling and offered to pay cross-complainant for the damages to the dwelling and sent a check written in cross- complainant and Residential Mortgage as a loss payee.  This amount for the property damage was less than the damage actually sustained by cross-complainant. PSIC and its authorized agent advised cross-complainant that the value of the losses-both the dwelling, persona property was significantly less than the true value of damages and/or the necessary repairs than submitted by cross-complainant..

18.  At all times herein plaintiff has fully cooperated with PSIC and

provided access to the residence as well as documentation of the claim to his best ability.   Cross-complainant has performed each and every covenant, condition and obligation that is required to  be performed by him under the contract, except to the extent excused, waived or made impossible by Defendants' conduct.  Defendant, however,  denied to pay all of cross complainant's damages and this constitutes a breach of contract.

19.    Cross-complainant alleges that PSIC breached the insurance contract  by:

a.  failing to promptly and reasonably adjust the claim.

b. failing to properly train and /or instruct its adjusters and/or agents

c.  failing to take into account increases in the cost of labor, material and/or replacement costs and adjusting claims for these increased costs;

d. failing to timely provide sufficient funds for the repairs and replacement of the subject property.

e.  failing to property evaluate and provide a fair market value for the personal property destroyed/damaged by the fire..

f.  failing to pay for sufficient living expenses incurred by cross-complainant his insured residence in the time frame of the relevant insurance contract.

g.  failing to promptly adjust and property  pay the policy limits for the plaintiff's loss sustained at his residence.

i.  Any other acts or omissions to be shown at trial on the merits.

20.   As a proximate result of PSIC's  breach , Cross- complainant

1  sustained damages in the amount to be established at the trial of this action.

2      WHEREFORE, Cross- complainant  prays for judgment as set for th

3  below.

### SECOND CAUSE OF ACTION

### *Breach of Covenant of Good Faith and Fair Dealing*

### (*Against PSIC*)

7      21.  Cross- complainant incorporates the allegations from 1 to 13 as

8  though fulls set forth herein.

9      22.  The insurance contract between cross-complaint and PSIC

10 contained an implied covenant of good faith and fair dealing by and

11 between the parties which prohibits them from engaging in any activity or

12 conduct which would prevent the other party from receiving the full benefit

13 of the contract.

14     23.  Cross-complainant has fully performed all covenants, conditions

15 and obligations required by the contract to be performed by reason, except

16 to the extent waived, excused or made impossible by defendant's breach of

17 the contract.

18     24.  PSIC breached the good faith and fair dealing by the following

19 activity and/or conduct:

20     Failing to acknowledge and act reasonably promptly upon

21 communications with respect to claims arising under insurance

22 policies,   failing to adopt and implement reasonable standards for the

23 prompt investigation and processing of claims arising under insurance

24 policies, not attempting in good faith to effectuate prompt, fair, and

25 equitable settlements of claims in which liability has become

26 reasonably clear, failing to settle claims promptly, where liability has

27

28                              -8-

become apparent, issuing a check with the name of various loss payee without providing the address and advising the loss pay, thereby effectively, delaying any repair work on the dwelling.

25.  PSIC  acted oppressively, fraudulently, and maliciously, in a willful and conscious disregard of Cross- complainant 's right, and with the intention of causing or in reckless disregard of probability of causing injury to plaintiff.

26.   Plaintiff suffered damages legally caused by the bad faith as stated in  the prayer.

WHEREFORE, Cross- complainant  prays for judgment as set for th below.

### THIRD CAUSE OF ACTION

### *Violation of the California Homeowners' Bill of Rights*
### *(Against SPS)*

27. Cross -complainant incorporates the allegations from 1 to 13 as though fulls set forth herein.

28. The  California Homeowner's Bill of Rights explicitly provides a private right of action by cross-complainant (See Cal. Civ. Code §2923.6)

    i.      against loan servicers and trustees for their conduct during foreclosure, as well as

    ii      during the loan modification application submission and review processes.

The statute specifically prohibits the practice commonly known as "dual track foreclosure," whereby lenders and loan servicers continue to advance the foreclosure process with  respect to borrowers whose loans are simultaneously being reviewed for modification eligibility.

29.  The remainder of Cal. Civ. Code §2923.6 is aimed particularly at dual  tracking, the automated process that leads lenders and servicers to reassure borrowers of the likelihood of modification and/or the protections of the modification process against sale of the property, while simultaneously pursuing foreclosure and ultimately exercising the power of foreclosure.

30.  California Civil Code 2923.6(c)(1) further provides that a mortgage servicer,  mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default  or notice of sale or conduct a trustee's sale until the "[m]ortgage servicer makes a   written determination that the borrower is not eligible for a first lien loan modification,  and any appeal period pursuant to subdivision (d) has expired." Subdivision (d) of  Section 2923.6 provides 30 days from the date of a written denial for a borrower to appeal the decision denying a loan modification.

31.  In violation of the Statute Cross-complainant alleges that SPS was conducting and soliciting short sale of cross complainant's while at the same time SPS is assuring cross complainant that he is being considered for loan modification.

32.  Cross-complainant also alleges that on or about Noevember 13, 2013, SPS advised cross-complainant that SPS is  " unable to approve your request for assistance involving a short payoff" In fact, cross complainant never applied for short payoff.  Again SPS in it letter dated January 3, 2014, it again advised cross-complainant SPS is "unable to complete our review of your request for a Short Pay off because we have not received all of the documentation were requested."   Cross-Complainant never applied for a short payoff and the statement of SPS is false.  If there was a pay off request

1    it must be from a party other than cross-complainant and this would be

2    violation of the dual track regulation.

3        33.   Additionally, the California Civil Code §2923.7 also mandates

4    that upon a mortgage servicer to establish a "single point of contact," with

5    whom the borrower will deal throughout the application process.  Despite

6    this law, cross defendant was assigned to numerous "Home Preservation

7    Specialist" during the one year he has been waiting for his loan

8    modification. The fact is also these specialist were consistently unavailable.

9

10   **[**16 Under Cal. Civ. Code § 2923.7, a "single point of contact"

11   is responsible for "[c]ommunicating the  process by which a

12   borrower may apply for an available foreclosure prevention

13   alternative and the deadline for any required submissions to be

14   considered for these options,' "[c]oordinating receipt of all

15   documents associated with available foreclosure prevention

16   alternatives and notifying the borrower of any missing

17   documents necessary to complete the application," "[h]aving

18   access to current information and personnel sufficient to

19   timely, accurately, and adequately inform the borrower of the

20   current status of the foreclosure prevention alternative,"

21   [e]nsuring that a borrower is considered for all foreclosure

22   prevention  alternatives offered by, or through, the mortgage

23   servicer, if any," and "having access to individuals with  the

24   ability and authority to stop foreclosure proceedings when

25   necessary."**]**

26

27

28                              -11-

34. As such, SPS' actions are in clear violation of the California Home Owner's Bill of Right-- restrictions on dual tracking, its requirement of a single point of contact, as well as its mandatory written denial and appeal procedures. Promptly, upon each of its numerous requests, SPS received all necessary documentation from Plaintiffs over the course of 12 months; any stated deficiencies were likewise corrected in a timely manner. Plaintiffs' request for a loan modification was apparently never denied; in fact, upon each of Plaintiffs'  diligent status inquiries, they were instead referred to a case manager or contact person who was routinely changed.

35. As a proximate violation of these legal obligations by SPS, Cross complainant  sustained injury in that it was denied the opportunity to modify its loan, charged fees on its loan and interest.  Cross complainant also believed that his loan modification would go forward and he spent more than 25,000.00 repairing the fire damage on his property which he would otherwise have not done so.

WHEREFORE, Cross- complainant  prays for judgment as set for th below.

### FOURTH CAUSE OF ACTION

### *Negligence*

(Against SPS)

36.  Cross-complainant re-alleges and incorporates herein by reference each and every allegation set forth in paragraphs 1 through 13 and 27 through 35 of this cross-complaint.

37.  Cross-Defendant SPS has a duty under California Home Owners Bill of Right, to not engaging in dual tracking and ensure that a single contact person is assigned to cross-defendant in his loan modification

1  application process.   SPS also represented to the plaintiff that in its letter of
2  January 16, 2013 that Cross-complainant has met the criteria for loan
3  modification but failed to process his application by asking over and over
4  again the same documents that he already provided and by also
5  misrepresenting the fact that cross-complainant applied for a short pay off
6  which he never did.

7        38.   As a proximate violation of these legal obligations by SPS,
8  Cross complainant  sustained injury in that it was denied the opportunity to
9  modify its loan, charged fees on its loan and interest.  Cross complainant
10  also believed that his loan modification would go forward and he spent
11  more than 25,000.00 repairing the fire damage on his property which he
12  would otherwise have not done so.

13        WHEREFORE, Cross-complainant prays for judgment as set for th
14  below

15                    **FIFTH CAUSE OF ACTION**
16                    *(Fraudulent misrepresentation)*
17                          *(Against SPS)*

18        39.  Cross-complainant re-alleges and incorporates herein by
19  reference each and every allegation set forth in paragraphs 1 through 13 and
20  27 through 38 of this cross-complaint.

21        40.   SPS repeatedly beginning October 17, 2012, made
22  representation that it will work with cross complainant to "make your
23  mortgage payment affordable".  In its letter of January 16, 2013, it assured
24  plaintiff that "you meet the criteria required to apply for a new modification
25  program".   In January 24, 2013, it represented that "we are in  process of
26  evaluating your loan for program that is available" .  The same kind of

27

28                              -13-

assurances and representation were made by SPS in its letters of February 4, 2013, February 11, 2013, February 12, 2013, February 19, 2013, and September 9, 2013, October 2, 2013.   On or about November 13, 2013, SPS falsely represented that cross-complainant has applied for Short pay off.  It stated "We determined that we are unable to assist you in the proposed arrangement because the offer received was not sufficient".  Cross defendant never made an off for short payoff".

41.  When SPS made the above representations, it knew they were false as SPS was at the same time trying fo sell cross-complainant's property to another third party through a short payoff.

42.  Cross-complainant justifiable relied on these representations and submitted all the documentation and spent numerous hours contacting SPS and resubmitting the documentation.   Cross-complainant also believed that he would be given a fare shake at the loan modification and with that hope started incurring substantial sum of money to repairing his fire damaged residence out of his own resource which he would not have done.

43.  As a proximate violation of these legal obligations by SPS, Cross complainant  sustained injury in that it was denied the opportunity to modify its loan, charged fees on its loan and interest.  Cross-complainant also believed that his loan modification would go forward and he spent more than 25,000.00 repairing the fire damage on his property which he would otherwise have not done so.

44.  SPS  acted oppressively, fraudulently, and maliciously, in a willful and conscious disregard of Cross-complainant's right, and with the intention of causing or in reckless disregard of probability of causing injury to plaintiff.

-14-

45   Cross-Complainant hereby demands Jury Trial.

WHEREFORE, cross-complainant  prays for judgment as set for th below

**Prayer for Relief**

WHEREFORE, cross- complainant  pray for judgment in their favor, and against Cross defendants, as it applies to their causes of action, such that:

1.    Cross- complainant  be awarded compensatory damages according to proof;

2.    Cross- complainant be awarded punitive damages for the Third and Fifth cause of actions.

3.    Cross- complainant  be awarded statutory or treble damages as prescribed by statute;

3.    Cross- complainant  be awarded attorney's fees as provided by statute;

4.    Cross- complainant  be awarded costs of suit incurred herein;

5.     Cross- complainant  be awarded interest and the prevailing legal rate of interest on any  damages to the extent permissible under the law;

6.    Cross- complainant  be awarded such other and further equitable relief, declaratory relief  and legal damages as may be permitted by law and as the court may deem just and  proper.

Dated: March 31, 2014

*/s/ Tesfaye W. Tsadik*
Attorney for Defendant and Cross-
Complainant
ADEL M. MAHMOUD

-15-